**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADELAIDE VELOSO,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 18-16673 (SDW)<br><br><br>**OPINION**<br><br><br>July 18, 2019 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Adelaide Veloso's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Peter R. Lee's ("ALJ Lee") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Lee's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision will be **AFFIRMED**.

I. **PROCEDURAL AND FACTUAL HISTORY**

A. **Procedural History**

On December 16, 2014, Plaintiff completed a Title II application for DIB, alleging a disability onset date of December 1, 2007 due to physical and mental impairments including mitral valve prolapse, anxiety disorder with panic attacks, temporomandibular joint disorder, and carpal tunnel syndrome of the right hand. (Administrative Record [hereinafter R.] 77, 172-175, 210); *see also* 42 U.S.C. § 423. The application was denied initially on August 13, 2015 (R. 106-10) and on reconsideration on January 12, 2016. (R 113-17.)[1] ALJ Lee held a hearing on October 17, 2017, in which Plaintiff, who was represented by counsel, and vocational expert Jackie L. Wilson ("VE Wilson"), testified. (R. 35-68.) On December 11, 2017, the ALJ issued a decision that Plaintiff was not disabled and denied her application for DIB. (R. 17-29.) On September 28, 2018, the Appeals Council denied Plaintiff's request for review, and ALJ Lee's decision became the Commissioner's final decision. (R. 1-3.) Plaintiff now requests that this Court reverse the Commissioner's decision. (Compl. at 2, ECF No. 1.)

B. **Factual History**

1. **Personal and Employment History**

Plaintiff was born on March 19, 1977, and was forty years old on the date of ALJ Lee's decision. (R. 39, 46.) She can communicate in English and graduated college. (R. 39, 211.) Plaintiff previously worked as a part-time cashier, a part-time sandwich maker, a full-time shoe sale specialist, and was working part-time as a merchandise handler at Marshalls department store at the time of the administrative hearing. (R. 39-42; 212.)

---

[1] Plaintiff alleged a new condition of bipolar disorder at the reconsideration level. (R. 113.)

### 2. Physical Medical History

The record demonstrates that numerous practitioners examined, consulted, and treated Plaintiff for physical medical issues associated with her disability claim. (R. 213-19.) The following is a summary of the evidence.

Plaintiff underwent a craniotomy and ventricular peritoneal shunt placement in 1993 to treat tuberculosis meningitis, but subsequently experienced residual issues including vertigo, temporomandibular joint dysfunction, migraine headaches, and loss of balance. (R. 46-48, 284-85, 358, 446, 472, 475.) Medical records note Plaintiff's stable recovery after her shunt placement. (R. 422; 446-47, 475.) However, beginning in 2013, Plaintiff complained of vertigo, poor vision, chest pain, coughing, dizziness, palpitations and migraine headaches. (R. 358-64, 380, 426, 449, 486-87, 520.) Plaintiff has also complained of chronic headaches, but reports that her condition improved with Topamax. (R. 473.) On October 10, 2016, an MRI of Plaintiff's brain revealed the presence of temporoparietal encephalomalacia and atrophy, however it showed no evidence of fluid or swelling of the brain. (R. 449.) Plaintiff also underwent EEG examinations in 2010 and in 2017 which presented as normal and did not detect seizures. (R. 290, 476-78.)

In 2015, Plaintiff reported difficulty breathing and syncopal episodes attributed to mitral valve prolapse and asthma. (R. 285, 420, 479-84.) She uses an inhaler and takes medication for her asthma. (R. 479, 488.) Medical records consistently document Plaintiff's normal respiratory conditions, clear lungs, and unlabored breathing. (R. 80, 302, 355, 359, 393, 420, 426, 472, 479-93, 503-22.)

### 3. Psychological Medical History

Plaintiff has a history of psychiatric illnesses, and was diagnosed with bipolar disorder,[2] with primary depressive episodes, anxiety, and panic disorder by her longtime treating psychiatrist Dr. Allison Weiner ("Dr. Weiner"). (R. 414-419, 427-29, 464-69.) Dr. Weiner noted that Plaintiff would snap at customers at her job, cry easily, and isolate herself. (R. 416-17.) Although Dr. Weiner reported that Plaintiff's concentration and memory were poor, she stated that Plaintiff was oriented, displayed fair judgement, and was not suicidal or homicidal. (R. 428.) Dr. Weiner completed a medical status evaluation ("MSE") dated August 31, 2017, in which she opined that Plaintiff's mental abilities were limited in numerous categories, making her unable to meet competitive standards, and estimated that Plaintiff would miss work about four days per month. (R. 415, 464-69.) Although Dr. Weiner determined that Plaintiff was seriously limited in her ability to travel to unfamiliar places, she indicated that Plaintiff could interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (R. 467.)

### 4. Function Report

Plaintiff submitted a self-function report on April 13, 2015 in which she alleged suffering from anxiety, depression, and panic attacks, which limit her to working four hours a day. (R. 233-40.) She described having difficulty lifting, bending, sleeping, completing tasks, concentrating, handling stress or changes in her routine, following instructions, and remembering. (R. 234-38.) Plaintiff noted using her phone for reminders. (R. 235.) She claimed she could not go shopping, read, pay bills, complete household chores, or handle a

---

[2] Plaintiff was reportedly prescribed Trileptal and Zoloft for her bipolar disorder. (R. 464.)

savings account due to her ailments. (R. 234-37.) Plaintiff claimed that she was unable to drive due to panic attacks, but could walk, use public transportation, and ride in a car. (R. 236.) She also reported that she could tend to her personal grooming, prepare simple meals, feed her cat, travel independently, and engage in leisure activities, and did not report any unusual behavior or fears. (62, 233-39.) Although Plaintiff reported difficulty handling stress and socializing, she admitted to getting along with authority figures, family, friends, neighbors, and others. (R. 237-39.) Plaintiff also indicated she had never been fired from a job. (R. 239.)

### 5. State Agency Assessments

On June 23, 2015, state agency Psychologist, Dr. Leslise Williams ("Dr. Williams"), reviewed Plaintiff's medical records and noted that Plaintiff was oriented, alert, and non-psychotic. (R. 83.) She concluded that Plaintiff was "capable of understanding instructions and maintaining pace and persistence in simple, routine, and low contact work." (R. 72-75.)

State physician Dr. David Tiersten's ("Dr. Tiersten") physical RFC assessment on August 13, 2015, and Dr. Jose Rabelo's ("Dr. Rabelo") subsequent evaluation of Plaintiff's medical records at the reconsideration level on January 2016, determined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift ten pounds. (R. 80, 94, 97.) Plaintiff had an unlimited ability to push, pull, balance, kneel, crouch, and crawl. (R. 80.) Plaintiff could also stand, walk, and sit with normal breaks for a total of six hours in an eight-hour workday. (*Id.*) Further, Plaintiff's ability to carry out detailed instructions, pay attention and concentrate for extended periods, and sustain an ordinary routine without special supervision was not significantly limited. (R. 82, 99.) Dr. Tiersten concluded that Plaintiff's psychological symptoms only moderately limited her from completing a normal workday. (R. 82.) Dr. Rabelo

affirmed Dr. Tiersten's finding, noted that Plaintiff did not allege worsening of her physical condition, and concluded that she was no more than moderately limited in her abilities. (R. 94.)

On January 11, 2016, Dr. Paul Fulford ("Dr. Fulford"), performed a consultative psychiatric evaluation and RFC assessment of Plaintiff. (R. 433-36.) He noted that Plaintiff presented a depressed mood, impaired appetite, marginal judgment and low energy and diagnosed her with dysthymic disorder. (R. 434-35.) Nevertheless, Dr. Fulford opined that Plaintiff was of age-appropriate appearance, well-groomed, with good hygiene, posture, and gait. (R. 434; *see also* R. 93.) She was cooperative, and demonstrated clear speech, abstract thinking, and good short-term memory, concentration, mental control, and motivation. (R. 434.) Dr. Fulford also noted that Plaintiff was oriented to month, day and year, and did not display looseness of association or circumstantial or tangential thinking. (R. 435-35.)

At the reconsideration level, Dr. Bortner challenged the findings of Plaintiff's treating psychiatrist, Dr. Weiner, stating that they lacked sufficient medical evidence and did not present objective findings. (R. 96.) Dr. Bortner opined that Dr. Weiner's notes failed to include a complete MSE describing Plaintiff's appearance, any presence or absence of thought disorder, progression of thought processes, or nature of associations. (R. 96, 436.) Dr. Bortner also noted that a complete assessment would include an evaluation of Plaintiff's mood, suicidality, lethality, dangerousness, cognition, memory, attention and concentration. (R. 96.) Dr. Bortner affirmed the earlier findings by state agency doctors, noting that a MSE submitted thereafter by Dr. Weiner presented findings within normal limits and reflected no change. (*Id.*) Dr. Bortner concluded that Plaintiff was no more than moderately limited in her mental abilities and could perform unskilled work and past relevant work. (R. 94.)

### 6. Hearing Testimony

During the administrative hearing before ALJ Lee, Plaintiff reported working several part-time jobs since her alleged onset of disability, including a position at Marshalls as a merchandise handler at the time of her testimony. (R. 39-46.) Plaintiff indicated that her live-in boyfriend drove her to a bus stop from where she took a bus to work, because she could not drive because of headaches. (R. 57, 61.) She also admitted that she had stopped taking her medication for headaches because of the side effects. (R. 58-59.)

Plaintiff alleged experiencing intermittent episodes of vertigo twice a year (R. 51-52), and daily migraine headaches multiple times a day, lasting from ten to twenty minutes. (R. 44-45, 49-51.) Plaintiff recounted receiving special accommodations while working as a cashier at Wendy's and subsequently at Marshalls, including regular breaks and assignment to the fitting room on a calmer setting. (R. 43-44.) Plaintiff reported only calling in sick once a month while working at Wendy's and not missing any time from Marshalls. (R. 59-60.)

Plaintiff discussed making mistakes at work and having difficulty thinking, concentrating, and keeping friends, but indicated that her medication made her calmer. (R. 54-57.) Although she claimed feeling depressed, having manic bipolar episodes, and experiencing sleep disturbance, she reported a decrease in suicide thoughts. (R. 53-55.) Plaintiff used breathing techniques and medication to alleviate her panic attacks. (R. 56.) Although she indicated a dislike of crowds (R. 55), she described regularly walking in the park and going out to restaurants on weekends with her boyfriend. (R. 58, 62.) Plaintiff indicated only consulting with Dr. Weiner for her mental impairments, and reducing the frequency of those consultations. (R. 53.)

VE Wilson also testified at the hearing and opined that a hypothetical individual at the light exertional level with Plaintiff's vocational characteristics and limitations as specified by the ALJ, would not be able to conduct any of Plaintiff's past work. (R. 64.) However, the VE also determined that a hypothetical individual, of Plaintiff's age, education, and work experience, would be able to perform other jobs that exists in the national economy, such as inspector/hand packager, photocopy machine operator, and sealing and canceling machine operator. (R. 64-65.)

## II.  LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL

1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous

9

work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an

individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

On December 11, 2017, ALJ Lee applied the five-step disability test and determined that Plaintiff was not disabled between the onset date and the date last insured. (R. 17-29.) ALJ Lee's findings are supported by substantial evidence. There is no basis for reversal because Plaintiff's complaints are not supported by the objective medical evidence on the record.

At step one of the five-step test, ALJ Lee determined that Plaintiff did not engage in substantial gainful activity during the relevant period. (R. 22); *see also* 20 CFR 404.1571 *et seq*. Plaintiff alleged that she was disabled as of December 1, 2007, but indicated at the hearing that she worked several jobs on a part time basis since her alleged onset of disability, her most recent work activity at Marshalls as a merchandise handler. (R. 20, 39-46.)

At step two, ALJ Lee found that Plaintiff's asthma, migraine headaches, vertigo, bipolar disorder, and general anxiety disorder were severe impairments because they significantly limited her mental and physical abilities to do one or more basic work functions. (R. 22-23); *see*

12

*also* 20 CFR 404.1520(c). This finding is supported by substantial medical evidence in the record. (R. 414-419, 433-435, 475, 481, 484.) ALJ Lee properly considered the entire record in concluding that Plaintiff's mental impairments were not severe, and supported his findings by referring to contradictions between Plaintiff's alleged limitations and her testimony regarding her inability to get along with people, follow written and spoken instructions, and handle stress and changes in a routine. (R. 23, 39-42, 236-39.)

At step three, ALJ Lee found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (s), 404.1525, and 404.1526). (R. 23.) He noted that listing 3.03 (asthma) was not met because the record did not include a pulmonary function test that satisfied the listing requirements. (R. 23.) The ALJ explained that there is no listing criteria for migraine headaches. (R. 24.) He then properly found that no acceptable medical source in the record determined that Plaintiff's impairment medically equaled a listed impairment. (R. 24, 72-103.) The ALJ appropriately considered objective medical evidence.

ALJ Lee found that Plaintiff's mental impairment did not meet Paragraph B criteria of listing 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), which required that the mental impairment result in at least two "marked" limitations or one "extreme" limitation. (R. 24.) ALJ Lee also accounted for Plaintiff's physical and mental impairments when making Plaintiff's RFC determination and concluding that Plaintiff could perform light work as defined in 20 CFR 404.1567(b). (R. 24-27.)

ALJ Lee afforded significant weight to Dr. Tiersten and Dr. Rabelo's physical RFC assessments indicating that Plaintiff could perform light work activity. (R. 25, 72-103.) The ALJ appropriately accounted for Plaintiff's vertigo and included greater postural environmental

limitations than those identified by Dr. Tiersten and Dr. Rabelo. (R. 25.) ALJ Lee afforded the mental assessments completed by Dr. Williams and Dr. Bortner great weight and found them to be consistent with the record. (R. 25, 72-103, 430-31, 437.) Dr. Williams determined that Plaintiff was able to understand instructions and maintain pace in simple, and low contact work. (R. 83.) ALJ Lee used substantial evidence found to properly conclude that Plaintiff had the RFC to complete simple, routine tasks in a work environment that entailed occasional contact with supervisors and co-workers and no contact with the public. (R. 25.) ALJ Lee afforded limited weight to Dr. Weiner's opinion, noting the lack of supporting evidence in the record, and the fact that Plaintiff was working without missing any days of work. (R. 26, 59-60.)

At step four, the ALJ derived his determination from VE Wilson's testimony, and using substantial evidence, found that Plaintiff could not perform past relevant work. (R. 27, 63.)

Thereafter, the ALJ proceeded to step five, and considering Plaintiff's age, education, work experience, and RFC, found that Plaintiff was not disabled because she was capable of successfully adjusting to other jobs that exist in significant numbers in the national economy. (R. 27-29, 65-66.) In reaching this determination, ALJ Lee relied on VE Wilson's testimony that Plaintiff could work as inspector/ hand packager, photocopy machine operator, and sealing and canceling machine operator. (R. 28, 64-65); *see also* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a). The ALJ also evaluated hearing testimony and Plaintiff's function report to conclude that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and liming effects of her symptoms were not entirely consistent with the objective medical evidence. (R. 26, 39-42, 82, 302, 355-67, 387, 393, 420-26, 472, 480-89, 504, 508, 511-21.)

On appeal, Plaintiff seeks reversal of the Commissioner's decision and argues that: (1) ALJ Lee erred at step three by failing to fully and properly consider Plaintiff's impairments as meeting or equaling listing 12.04 and 12.06; (2) ALJ Lee's RFC finding is not based upon substantial evidence; (3) ALJ Lee's RFC finding is completely at variance with the opinions of Plaintiff's treating psychiatrist, Dr. Weiner; and (4) ALJ Lee failed to properly consider Plaintiff's pain and subjective complaint. (Pl.'s Br. at 1, EFC No. 8.) This Court considers these arguments in turn and finds them each without merit.

With respect to her first argument, Plaintiff takes issue with the ALJ's finding that her mental functioning limitations were categorized as "at most moderate" as opposed to "extreme" or "marked." (R. 23; Pl.'s Br. at 16.) Other than referencing Dr. Weiner's evaluation, Plaintiff primarily relies on her subjective allegations to argue that her limitations are more severe. (R. 39-62, 233-40; Pl.'s Br. at 16-18.) ALJ Lee's opinion provided a thorough discussion of the record including the independent determination of the agency doctors that Plaintiff was not precluded from working despite her impairments. (R. 22-27.) The ALJ noted that despite Plaintiff's alleged difficulty following instructions (R. 238), she testified that she worked during the relevant period and at the time of the hearing was working as a merchandise handler. (R. 23, 39-41; *see also* 466.) He also highlighted Plaintiff's assertion that she was never fired from a job and that she did not miss any work at Marshalls due to her ailments. (R. 59, 239.) ALJ Lee also appropriately used VE Wilson's testimony to compare the demands of Plaintiff's previous occupations to her RFC. (R. 27, 63.) The ALJ referenced the relevant listings and using substantial evidence, determined that Plaintiff failed to meet them. *See Jones v. Barnhart*, 364 F. 3d 501, 504-05 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 120 (3d Cir. 2000)) (explaining that the ALJ is not required to "use particular language or adhere to a

15

particular format in conducting his analysis. Rather… ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.")

Plaintiff's argument that ALJ Lee's RFC finding is not based upon substantial evidence is also without merit. (Pl.'s Br. at 12, 17-18.) It is the ALJ's responsibility to evaluate and weigh the medical evidence and give it the weight he deems appropriate. 20 C.F.R. § 404.1527(c)(1)-(4); *see also* 20 C.F.R. § 404.1527(d). However, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007). The Act provides that "there must be medical signs and findings, established by medically acceptable . . . techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged, and which, when considered with all evidence . . . , would lead to a conclusion that the individual is" disabled. 42 U.S.C. § 423(d)(5)(A).

As to Plaintiff's reliance on Dr. Weiner's opinions, the ALJ is not required to give Dr. Weiner more credit than other doctors. ALJ Lee appropriately considered Dr. Weiner's opinions in conjunction with the entire record of objective medical evidence. (R. 24-29, 302, 355, 358, 361-367, 387, 393, 420-26, 472, 480-89, 504, 508, 511, 515-17, 521.) He sufficiently explained why he gave greater weight to the opinions of the state agency experts. (R. 24-29.) Despite treating Plaintiff since 2005, Dr. Weiner's records did not present objective findings or provide functional data evaluating Plaintiff's mood, suicidality, cognition, memory, attention and concentration, nor did Dr. Weiner conduct a complete MSE until August 31, 2017, or update his records to reflect changes over time. (R. 96, 464-469.) This Court will not re-weigh the evidence or engage in a *de novo* review of the Commissioner's determinations. *See* 42 U.S.C. §

405(g); *Richardson*, 402 U.S. at 390, 401 (1971); *Davis v. Comm'r of Soc. Sec.*, No. 17-9424, 2019 WL 449200, at *3 (D.N.J. Feb. 5, 2019).

In regard to Plaintiff's argument that ALJ Lee failed to properly consider Plaintiff's pain and subjective complaintss (Pl.'s Br. at 21, EFC No. 8.), ALJ Lee thoroughly evaluated the credibility of Plaintiff's subjective complaints, function report and testimony, but ultimately determined that they were inconsistent with the objective medical evidence, the opinions of the expert state agency reviewing physicians, and Plaintiff's activities. (R. 25-26.); *see also* 42 U.S.C. § 423(d)(5)(A). The ALJ properly accounted for Plaintiff's history of asthma and respiratory limitations while determining Plaintiff's RFC. (R. 26, 80, 420, 479.) Further, although Plaintiff alleges poor memory (R. 235-38), medical records note that Plaintiff presented intact judgement, short term memory, object recall, and insight. (R. 93, 355, 359, 393, 447, 479, 484, 490.) ALJ Lee properly noted the discrepancy of Plaintiff's claim regarding her inability to work with her testimony of work activities. (R. 22, 39-46, 59-60.) After properly following the five-step disability test, ALJ Lee determined that Plaintiff is not disabled under the Act. While Plaintiff has real limitations, these do not preclude her from performing work available in the national economy. The ALJ's decision is supported by the substantial credible evidence.

## IV. CONCLUSION

This Court finds that ALJ Lee's factual findings were supported by substantial credible evidence in the record. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

17